**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

KEITON SMITH,

Plaintiff,

v.

MAXWELL HARDCOURT, *et al.*,

Defendants.

Case No. 2: 23-cv-01897-RFB-EJY

**ORDER**

Before the Court is Defendant Cody Castiglioni's Motion for Summary Judgment (ECF No. 38). The record would permit a reasonable jury to find either that Defendant conducted a neutral investigation of Plaintiff's sexual abuse complaint or that he discredited Plaintiff with inaccurate disciplinary history because Plaintiff made the complaint. The Court cannot resolve that dispute as a matter of law. Accordingly, Defendant's Motion for Summary Judgment is **DENIED**.

## I. PROCEDURAL BACKGROUND

Plaintiff Keiton Smith, who is incarcerated and proceeding *pro se*, brings this action under 42 U.S.C. § 1983. The operative complaint is the First Amended Complaint. ECF No. 8. Pursuant to the Court's Screening Order, Plaintiff proceeds on an Eighth Amendment claim against Defendant Maxwell Hardcourt[1] and a First Amendment retaliation claim against Hardcourt and Defendant Cody Castiglioni. ECF No. 9 at 7. The Office of the Attorney General accepted service on behalf of Defendant Castiglioni but not Hardcourt. ECF No. 15. Defendant Castiglioni answered the First Amended Complaint on February 19, 2025. ECF No. 21.

---

[1] The caption and Plaintiff's filings spell this Defendant's name "Hardcourt," while NDOC's records generally spell it "Harcourt." The Court uses the caption spelling.

Hardcourt has not yet appeared in this action. On May 22, 2025, the Clerk of Court entered default against him. ECF No. 27. On May 30, 2025, Plaintiff moved for default judgment against him. ECF No. 28. On March 18, 2026, the Court denied that motion without prejudice (and noted that he had leave to re-file) because Plaintiff's motion did not address any of the seven factors that govern whether default judgment should be entered. ECF No. 53; see NewGen, LLC v. Safe Cig, LLC, 840 F.3d 606, 616 (9th Cir. 2016) (citing Eitel v. McCool, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Plaintiff's claims against Hardcourt therefore remain pending and this Order addresses only Plaintiff's First Amendment retaliation claim against Defendant Castiglioni.

Defendant moved for summary judgment on October 30, 2025. ECF No. 38 [hereinafter "Def. Mot."]. Plaintiff filed an opposition, ECF No. 49 [hereinafter "Opp'n"], and Castiglioni filed a reply on January 16, 2026, ECF No. 51 [hereinafter "Reply"]. This Order follows.

## II. PRELIMINARY MATTERS

Defendant argues that Plaintiff "merely states that he disputes material facts, he but does not point to any facts or evidence that contradict the evidence submitted by Investigator Castiglioni." Reply at 2. The Court disagrees. Plaintiff attached to his opposition the informal grievance he submitted challenging Defendant's investigation, signed under penalty of perjury; a Nevada Department of Corrections ("NDOC") inmate request form and staff response concerning his disciplinary history; and a copy of the investigation report. See generally Opp'n. The Court may consider materials in the record beyond those the parties expressly cite. See Fed. R. Civ. P. 56(c)(3). The Court also treats the handwritten notes Plaintiff added to the margins of his copy of the investigation report as part of his argument.

Plaintiff also filed a document styled as a response in opposition to Defendant's Answer to his complaint and the affirmative defenses presented therein. ECF No. 23. The Federal Rules do not permit a reply to an answer unless the Court orders one. Fed. R. Civ. P. 7(a)(7). Because Plaintiff is proceeding *pro se*, the Court construes the filing as a motion to strike under Rule 12(f). However, the Court will deny this motion as it stands. Two defenses that Plaintiff points to, failure to exhaust and qualified immunity, are resolved in this Order. Many of the remaining defenses are

not affirmative defenses at all but denials of elements Plaintiff must prove. See Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1088 (9th Cir. 2002). Striking them now would not meaningfully narrow the issues for trial, and Parties can identify the issues remaining in dispute in their joint pretrial order. Plaintiff's remaining requests that the Court deny Defendant's request for dismissal and allow the case to proceed to discovery are moot.

Additionally, Defendant's Motion to Extend Time (ECF No. 50) is granted, *nunc pro tunc*, and his Motion to Seal (ECF No. 39) is also granted.

## III. LEGAL STANDARD

The Court is obliged to construe *pro se* filings liberally. See Estelle v. Gamble, 429 U.S. 97, 106 (1976).

Under the Federal Rules of Civil Procedure, a party is entitled to summary judgment when they demonstrate "that there is no genuine dispute as to any material fact and [they are] entitled to judgment as a matter of law" on their claim(s). See FED. R. CIV. P. 56(a); see also Hollis v. R&R Rests., 159 F.4th 677, 683 (9th Cir. 2025) (citation omitted). A fact is material if it "might affect the outcome of the suit under the governing law." Eat Right Foods Ltd. v. Whole Foods Mkt., Inc., 880 F.3d 1109, 1118 (9th Cir. 2018) (quoting Anderson v. Liberty Lobby Inc., 477 U.S. 242, 247 (1986)). Thus, "[a] genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Lerner & Rowe PC v. Brown Engstrand & Shely LLC, 119 F.4th 711, 717 (9th Cir. 2024) (quoting Anderson, 477 U.S. at 248).

At this procedural posture, the Court is solely charged with determining "whether there is a genuine issue [of fact] for trial;" in other words, this Court will not "weigh the evidence" or make credibility determinations to resolve factual disputes, which are ultimately reserved for the factfinder in this case. See Eat Right Foods Ltd., 880 F.3d at 1118 (quoting Anderson, 477 U.S. at 249); see also Zetwick v. Cnty. of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted). In doing so, the Court "view[s] the evidence in the light most favorable to the nonmoving party and make[s] all reasonable inferences in favor of that party." Eat Right Foods Ltd., 880 F.3d at 1118 (citing Tolan v. Cotton, 572 U.S. 650, 660 (2014)).

Federal courts apply a two-step framework to review motions for summary judgment. First,

this Court must decide whether the moving party has met their initial burden by "demonstrating the absence of a genuine issue of material fact." Hollis, 159 F.4th at 683 (citing Celotex Corp v. Catrett, 477 U.S. 317, 323 (1986)). The nature of this initial showing varies depending on which party carries the ultimate burden of proof on a given claim. When the movant does, they "must come forward with evidence which would entitle [them] to a directed verdict if the evidence went uncontroverted at trial." Gillings v. Time Warner Cable LLC, 583 Fed. App'x. 712, 715 (9th Cir. 2014) (unpublished disposition) (quoting C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000)). When the moving party does not carry the ultimate burden of proof, they can merely "point[ ] out that there is an absence of evidence to support the nonmoving party's case." Lerner, 119 F.4th at 717–18 (citation omitted).

If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted). Where a genuine dispute of material fact exists, however, the court will assume the version asserted by the non-moving party. See Bryan v. MacPherson, 630 F.3d 805, 823 (9th Cir. 2010); Coles v. Eagle, 704 F.3d 624, 629 (9th Cir. 2012) ("We must, in the context of summary judgment, resolve this disputed factual issue in favor of [the non-moving party and] draw all reasonable inferences in his favor. . . .").

## IV. FACTUAL BACKGROUND

Based on its review of the record, as framed by the Parties, the Court makes the following findings of fact.

### A. *Undisputed Facts*

Initially, the Court finds that the following facts are undisputed.

On July 29, 2022, while incarcerated at Southern Desert Correctional Center ("SDCC"), Plaintiff submitted an emergency grievance alleging that Hardcourt grabbed his penis during a pat search and refused his request for a grievance form, which Plaintiff then obtained from another

officer. PREA Investigation Report, ECF No. 40-1 at 7–8, 14 [hereinafter "PREA Report"]. A sergeant interviewed Plaintiff that day and noted that his account was consistent with the grievance. Hardcourt was then reassigned to another post. PREA Report at 7–8. Plaintiff's account on a recorded telephone call that evening was also. Id. at 8, 15.

The allegation was referred to the NDOC Office of the Inspector General on July 31, 2022, and assigned to Defendant on August 5, 2022. Id. at 2. Defendant interviewed Plaintiff on August 19, 2022, and Plaintiff identified an incarcerated person standing nearby as a witness. Id. at 8–9. That witness told Defendant he was about seven feet away and saw the officer reach around, grab Plaintiff's genitals, and ask, "What is that?" to which Plaintiff responded, "You know what the hell that is" and the witness reportedly stated, "You sure are doing a lot" to the officer. Id. at 9. Senior Officer Matthew Craig recalled providing a grievance form to an inmate reporting a PREA complaint arising from a pat search. Id. at 10, 12. Hardcourt, who had worked for NDOC for about five months, denied touching Plaintiff's penis and said the witness was lying, but after viewing the video acknowledged that he may have said "what is this," explaining that he was asking about what he thought was a sewn-in pocket. Id. at 10–11. Defendant also reviewed the video, Plaintiff's recorded calls, the grievance, and background information on Plaintiff and Hardcourt. Id. at 8, 12–13.

Defendant's report states that the video shows Hardcourt's hands going "to the side and front" of Plaintiff, that it "is inconclusive as to whether Ofc Harcourt grabbed inmate Smith's penis," and that Plaintiff "is clearly agitated" after the search, "which indicated that something had occurred." Id. at 8, 11. The report notes that the witness can be seen on the video "from only a few feet away" and that Hardcourt "could not accurately demonstrate proficiency" in universal pat searches during his interview. Id. at 12.

In analyzing each person's credibility, the report states that during Plaintiff's time at WSCC "he received notice of charges for possession of stolen property, attempt to defraud the federal government, and fighting," and that Plaintiff "may have credibility issues based on this observation." Id. It notes that Hardcourt had a letter of recommendation from a former Federal Bureau of Prisons employee and no other PREA complaints. Id. The report recommends closing

the allegation as unsubstantiated because it "can neither be proved nor disproved," explaining that the decision "came down to the credibility assessment" and that "Ofc Harcourt appeared to be more credible than inmate Smith." Id.

Defendant signed the report on October 6, 2022, his supervisor signed it on October 14, 2022, and the investigation was closed as unsubstantiated on October 21, 2022. Id. at 2–3, 13. The closure notification form bears a staff signature dated November 18, 2022, and a notation that Plaintiff refused to sign it. Id. at 4.

Plaintiff filed an emergency grievance. Grievance History, ECF No. 38-1 at 14 [hereinafter "Grievance History"]. Between August and December 2022, Plaintiff resubmitted his allegation against Hardcourt under the same log number as the initial grievance, and NDOC returned each submission with an Improper Grievance Memorandum. Id. at 15–16. One told Plaintiff that "[a]ny grievance alleging sexual abuse must begin at the 1st level." Id. at 15. Another told him to file both an informal grievance marked "for tracking purposes" and a first level grievance. Id. Finally, another dated March 23, 2023, rejected the submission for lacking a tracking informal grievance and stated, "THIS GRIEVANCE CANNOT BE RESUBMITTED. If you resubmit this grievance, it will be confiscated and retained in your Inmate Grievance File with no further actions taken" Id. at 16 (capitalization original).

On November 17, 2023, Plaintiff filed an informal grievance under the same log number challenging Defendant's investigation, which he signed under penalty of perjury. Id.; Opp'n at 22–25. He stated that the investigation was "thrown out" because Defendant found him not credible based on prior history, and that he did not have "those charges." Opp'n at 22, 24. He also stated that Defendant "verbally admitted," in front of a witness Plaintiff names, that Plaintiff did not have the issues Defendant cited, that Defendant should have done further research and had not been trained to investigate PREA allegations, and that the information "shouldn't of been added to the investigation." Id. at 25. Plaintiff asked that the grievance be upheld, that he not suffer "any recoil or targeting or retaliation," and that he be compensated. Id. at 24–25; Grievance History at 16.

NDOC received the grievance on November 20, 2023, assigned it the code "PREAS," and denied it on May 19, 2024. Opp'n at 21–22; Grievance History at 16. The response gave two

reasons. First, it found the grievance untimely under AR 740's six-month deadline because the case "was closed January 23rd, 2023" and Plaintiff was notified on January 24, 2023. Grievance History at 16. Second, it found that Plaintiff had not shown "any harm or loss from the case being 'thrown out.'" Id. The case number and closure date in the response do not match those of Defendant's investigation. PREA Report at 2, 4.

Under AR 740, informal grievances raising civil rights claims must be filed within six months, but "[t]imeframes are waived for allegations of sexual abuse and disability discrimination regardless of when the incident is alleged to have occurred." AR 740, ECF No. 38-2 at 11–12 (§ 740.08(4)(A), (D)) [hereinafter "AR 740"]. A grievance that does not "factually demonstrate a loss or harm" is returned to the offender "with an explanation as to what was missing," and the offender may correct and resubmit it. Id. at 4, 6 (§ 740.03(1)(A), (6)). An untimely grievance, by contrast, is deemed abandoned "at this and all subsequent levels." Id. at 12 (§ 740.08(8)). AR 740 also provides that offenders who use the grievance procedure "shall not be subjected to retaliation." Id.

**B. *Disputed Facts***

Next, the Court finds the following material facts are disputed by the Parties.

The Parties dispute whether the disciplinary history underlying the credibility finding was accurate. Plaintiff denies having "those charges." Opp'n at 24. He submitted an inmate request form dated December 27, 2022, on which NDOC staff responded, "No write-ups for fighting as of 12/27/2022," and identified a single notice of charges dated February 5, 2022. Id. at 54. Defendant has not submitted Plaintiff's disciplinary records, a declaration from Defendant, or other evidence identifying the source of the history in the report.

The Parties also dispute whether Defendant acknowledged that the history was inaccurate. Plaintiff's sworn grievance says he did, and Plaintiff contends that a handwritten signature and date on his copy of the report are Defendant's. Id. at 22, 25, 56. Defendant offers no evidence on this point.

Finally, the Parties dispute whether the investigation was impartial and adequate, whether Defendant's credibility finding was motivated by Plaintiff's protected conduct, and whether the grievance process was available to challenge the investigation. Def. Mot. at 2–3, 8–12; Opp'n at

2–4, 24–25.

**V. DISCUSSION**

**A. Exhaustion**

First, the Court considers whether Defendants are entitled to summary judgment because Plaintiff failed to exhaust his claims.

42 U.S.C. § 1983 provides a cause of action against any person who, acting under color of state law, deprives an individual of their federal rights, including under the Eighth Amendment. Incarcerated litigants must exhaust their administrative remedies before bringing claims under Section 1983. See Prison Litigation Reform Act 42 U.S.C. § 1997e(a) [hereinafter: PLRA]. Exhaustion of all available remedies is mandated. See Ross v. Blake, 578 U.S. 632, 642 (2016). But this exhaustion requirement applies only to remedies that are genuinely available. Id. Administrative remedies are unavailable when, *inter alia*, administrative procedures operate as a simple dead end, when the administrative scheme is so opaque that it becomes practically incapable of use, or when prison administrators thwart proper use of the grievance process through machination, misrepresentation, or intimidation. See id. at 643–45.

Failure to exhaust is an affirmative defense that the defendant must plead and prove. See Jones v. Bock, 549 U.S. 199, 216 (2007). If the defendants do so, then the burden shifts to the inmate to show "there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him by showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." Williams v. Paramo, 775 F.3d 1182, 1191 (9th Cir.) (2015). However, "the ultimate burden of proof remains with the defendant." Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). Improper screening of a grievance is one such circumstance. A prisoner is excused from further exhaustion if he establishes "(1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations." Sapp v. Kimbrell, 623 F.3d

813, 823–24 (9th Cir. 2010). And where a prison's regulations do not prescribe the level of detail a grievance must contain, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) (citation omitted).

Defendant argues that the only grievance Plaintiff filed about the investigation, the November 17, 2023 grievance, was properly denied as untimely and for failing to state a harm or loss. Def. Mot. at 3, 11–12; Reply at 4–5. Plaintiff responds that the grievance was rejected on technical grounds and that remedies were therefore unavailable. Opp'n at 4 (citing Sapp, 623 F.3d at 822–23).

The Court disagrees with Defendant. The November 2023 grievance named Defendant, described how he relied on allegedly inaccurate history to find Plaintiff not credible and closed the complaint, and asked that Plaintiff not be subjected to retaliation. Opp'n at 22–25. It was sufficient to alert NDOC to the nature of the wrong. See Griffin, 557 F.3d at 1120. The question is whether NDOC rejected it for reasons consistent with AR 740.

Defendant has not shown that it did. AR 740 waives filing deadlines for allegations of sexual abuse. AR 740 at 12 (§ 740.08(4)(D)). NDOC processed the November 2023 grievance under the log number of Plaintiff's sexual abuse grievance and coded it "PREAS," and the grievance expressly incorporated Plaintiff's original PREA grievance. Opp'n at 21, 24; Grievance History at 16. Defendant does not address the waiver or explain why NDOC measured timeliness from the closure of a different PREA case. Compare Grievance History at 16, with PREA Report at 2, 4. NDOC had also given Plaintiff shifting instructions on how to grieve his sexual abuse allegation before declaring that the grievance could not be resubmitted. Grievance History at 15–16. On this record, a reasonable factfinder could conclude that the process was "so opaque that it becomes, practically speaking, incapable of use." Ross, 578 U.S. at 643.

Plaintiff also clearly stated in his grievance a harm and the remedy he sought, which the response itself recited. Opp'n at 24–25; Grievance History at 16. Under AR 740, a grievance lacking a stated harm is returned so the offender can correct it. AR 740 at 4, 6. NDOC instead denied the grievance and deemed it untimely, which under AR 740 constitutes abandonment at all subsequent levels. Id. at 12. That left Plaintiff no further step to take before filing this complaint.

Viewing the record in the light most favorable to Plaintiff, Defendant has not carried his burden of showing that an available remedy existed and that Plaintiff failed to exhaust it. See Sapp, 623 F.3d at 823–24. Thus, Defendant is not entitled to summary judgment on exhaustion grounds. Of note, because the facts relevant to the exhaustion dispute concern NDOC's handling of the grievance rather than Defendant's own conduct, any remaining dispute on this defense would be decided by the Court rather than a jury. See Albino, 747 F.3d at 1166; cf. Perttu v. Richards, 605 U.S. 460, 479 (2025) (holding that "parties are entitled to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim protected by the Seventh Amendment").

**B. First Amendment Retaliation Claim**

Second, the Court turns to Plaintiff's First Amendment retaliation claim. "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005). The adverse action need not be an independent constitutional violation, and timing may serve as circumstantial evidence of retaliatory intent. Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012). The chilling inquiry asks whether the official's acts "would chill or silence a person of ordinary firmness from future First Amendment activities." Rhodes, 408 F.3d at 568 (internal quotation marks and emphasis omitted). The plaintiff bears the burden of proving the absence of a legitimate correctional goal. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).

First, as to protected conduct, the Court does not find this element to be genuinely in dispute. Prisoners have a First Amendment right to file grievances. Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009). Plaintiff's emergency grievance reporting sexual abuse by an officer, and his participation in the resulting investigation, are protected conduct, and Defendant does not argue otherwise.

In contrast, the Court finds genuine disputes of material fact as to whether Defendant took adverse action against Plaintiff because of that conduct. Defendant argues that the investigation

was thorough: he interviewed four people, reviewed video footage, calls, grievances, and background information, and that ultimately his supervisor approved the report. Def. Mot. at 8–9; Reply at 3. Plaintiff's claim, however, concerns how Defendant weighed the evidence. The number of steps the Defendant took and his supervisor's approval do not demonstrate that the history in the report was accurate.

The report itself acknowledged that an eyewitness corroborated Plaintiff's account, that the video showed Hardcourt's hands going to the front of Plaintiff, that Plaintiff's agitation "indicated that something had occurred," that Hardcourt seemed to say "what is this," and that Hardcourt could not demonstrate proficiency in the search technique. PREA Report at 8–12. The report nevertheless found Hardcourt more credible, citing only Hardcourt's recommendation letter and clean PREA history and Plaintiff's purported notices of charges. Id. at 12. The report does not explain why the eyewitness account did not affect that assessment. Plaintiff has produced evidence that at least part of that history was inaccurate and has sworn that Defendant admitted the history was wrong. Opp'n at 22, 25, 54. Defendant has offered no evidence in response.

Construing this evidence in Plaintiff's favor, a reasonable jury could find that Defendant used inaccurate disciplinary history to label Plaintiff not credible and close his sexual abuse complaint because Plaintiff made the complaint. Such a finding in an official report would chill a person of ordinary firmness from reporting abuse by staff. See Rhodes, 408 F.3d at 568.

A jury could also find that Defendant relied in good faith on information he believed was accurate. The Court will not weigh that evidence or decide credibility at this stage. Defendant's reliance on Scott v. Harris is misplaced, Reply at 2, because Plaintiff's account is not "blatantly contradicted by the record." Scott, 550 U.S. at 380. Much of his account rests on the report itself.

Defendant also argues that the investigation served the legitimate goal of PREA compliance. Def. Mot. at 9; Reply at 3. Investigating sexual abuse allegations is a legitimate goal, but prison officials "may not defeat a retaliation claim on summary judgment simply by articulating a general justification for a neutral process, when there is a genuine issue of material fact as to whether the action was taken in retaliation for the exercise of a constitutional right." Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003). A jury crediting Plaintiff's evidence could find

that discrediting an abuse complainant with inaccurate history did not advance that goal and that Defendant was personally biased against Plaintiff. Thus, the Court denies summary judgment on Plaintiff's First Amendment retaliation claim.

**C. Qualified Immunity**

Finally, the Court considers whether Defendant is entitled to qualified immunity. "The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. . . . existing precedent must have placed the statutory or constitutional question beyond debate." Mullenix v. Luna, 577 U.S. 7, 11–12 (2015) (internal quotation marks, citations, and alterations omitted).

When qualified immunity is reviewed in the context of a defense motion for summary judgment, the evidence must be considered in the light most favorable to the plaintiff with respect to central facts. See Tolan, 572 U.S. at 657 (2014) (*per curiam*). Summary judgment is inappropriate where genuine disputes of material fact prevent a determination of qualified immunity. See Bonivert v. City of Clarkston, 883 F.3d 865, 872 (9th Cir. 2018); Torres v. City of Madera, 648 F.3d 1119, 1123 (9th Cir. 2011); Lolli v. Cnty. of Orange, 351 F.3d 410, 421 (9th Cir. 2003).

Defendant argues that no case would have told him that interviewing witnesses, reviewing records, and writing a report could violate the First Amendment. Def. Mot. at 9–10; Reply at 3–4 (citing Kisela v. Hughes, 584 U.S. 100, 104 (2018)). But that argument assumes Defendant's version of the facts. The Court must assume the facts in a light most favorable to the Plaintiff. Here, Plaintiff alleges that Defendant retaliated against him for filing a sexual assault complaint by manipulating the investigatory process/hearing and reaching an adverse finding based upon his bias against Plaintiff. Plaintiff alleges that this retaliation also included the use of the inaccuracies of the record and failure to fully investigate witnesses for his sexual assault claim.

Existing precedent gave notice that Defendant's alleged conduct violated clearly established law. The Ninth Circuit has long held that it is a violation of an inmate's First

Amendment rights to retaliate against them for filing a grievance or filing a complaint against a prison officer for unlawful conduct. Rhodes, 408 F.3d at 569: Pratt, 65 F.3d at 806. Thus, Plaintiff's allegations taken in their most favorable light set forth a clearly established violation. Qualified immunity is therefore improper here.

Additionally, the Court further finds that there are genuine issues of disputed fact as to the claim here such that qualified immunity would also be inappropriate to grant. Bonivert, 883 F.3d at 872.

## VI. CONCLUSION

For the foregoing reasons, the Court orders the following:

**IT IS ORDERED** that Defendant Cody Castiglioni's Motion for Summary Judgment (ECF No. 38) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Extend Time (ECF No. 50) is **GRANTED**, *nunc pro tunc.*

**IT IS FURTHER ORDERED** that Defendant's Motion to Seal (ECF No. 39) is **GRANTED**.

**DATED:** September 30, 2026.

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**